**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Albert T.,[1]

          Plaintiff,

    v.

Kilolo Kijakazi,

          Defendants.

Case No. 2:22-cv-01053-BNW

**AMENDED ORDER**

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff Albert T.'s application for disability insurance benefits under Title II of the Social Security Act. On July 5, 2022, the parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c), and this matter was assigned to the undersigned for an order under 28 U.S.C. § 636(c). *See* ECF No. 3. The Court reviewed Plaintiff's motion for reversal and/or remand (ECF No. 22) and the Commissioner's cross-motion to affirm and response (ECF Nos. 27, 28) to which Plaintiff replied (ECF No. 30).

///

I.    **Procedural History**

On January 24, 2019, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging an onset date of October 31, 2018. ECF No. 17-1[2] at 292-302. Plaintiff's claim was denied initially. *Id*. at 219-301. The Appeals Council granted Plaintiff's request for review and remanded his case for further proceedings *Id*. at 244-46. After a second hearing, the ALJ again denied Plaintiff's claim in a decision dated February 3, 2022. *Id*. at 30-57. The Appeals Council denied Plaintiff's request for review. *Id*. at 7-13, making the ALJ's

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] ECF No. 17 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 17)). All citations to the Administrative Record will use the CM/ECF page numbers.

1  February 3, 2022, decision the Commissioner's final decision for purposes of judicial review.

2  Plaintiff then initiated this action pursuant to 42 U.S.C. § 405(g).

3  **II.    Discussion**

4      **1.    Standard of Review**

5      Administrative decisions in Social Security disability benefits cases are reviewed under 42

6  U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

7  provides that "[a]ny individual, after any final decision of the Commissioner of Social Security

8  made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

9  obtain a review of such decision by a civil action . . . brought in the district court of the United

10  States for the judicial district in which the plaintiff resides." The court may enter "upon the

11  pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

12  decision of the Commissioner of Social Security, with or without remanding the cause for a

13  rehearing." 42 U.S.C. § 405(g).

14      The Commissioner's findings of fact are conclusive if supported by substantial evidence.

15  *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

16  findings may be set aside if they are based on legal error or not supported by substantial evidence.

17  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

18  278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a

19  mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

20  might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

21  Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

22  whether the Commissioner's findings are supported by substantial evidence, the court "must

23  review the administrative record as a whole, weighing both the evidence that supports and the

24  evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

25  720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

26      Under the substantial evidence test, findings must be upheld if supported by inferences

27  reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

28

1   When the evidence will support more than one rational interpretation, the court must defer to the

2   Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

3   *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

4   before the court is not whether the Commissioner could reasonably have reached a different

5   conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on

6   the ALJ to make specific findings so that the court does not speculate as to the basis of the

7   findings when determining if the Commissioner's decision is supported by substantial evidence.

8   Mere cursory findings of fact without explicit statements as to what portions of the evidence were

9   accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

10   The ALJ's findings "should be as comprehensive and analytical as feasible, and where

11   appropriate, should include a statement of subordinate factual foundations on which the ultimate

12   factual conclusions are based." *Id.*

13              **2.       Disability Evaluation Process and the ALJ Decision**

14         The individual seeking disability benefits has the initial burden of proving disability.

15   *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

16   demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

17   determinable physical or mental impairment which can be expected . . . to last for a continuous

18   period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Moreover, the individual must

19   provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

20   § 404.1514. If the individual establishes an inability to perform her prior work, then the burden

21   shifts to the Commissioner to show that the individual can perform other substantial gainful work

22   that exists in the national economy. *Reddick*, 157 F.3d at 721.

23         The ALJ follows a five-step sequential evaluation process in determining whether an

24   individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

25   If at any step the ALJ determines that she can make a finding of disability or non-disability, a

26   determination will be made, and no further evaluation is required. *See* 20 C.F.R.

27   § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

28

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then a finding of disabled is made. *Id*. § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed

either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed an SGA. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). ECF No. 17 at 30-57.

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from January 1, 2020, through December 31, 2020. *Id.* at 34. However, the ALJ found that there had been continuous 12-month periods during which the claimant did not engage in substantial gainful activity: October 31, 2018, the application date, through December 31, 2019 and January 1, 2021 through February 3, 2022, the decision date. *Id*. The application was not denied solely based on the first step for these periods.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: hip osteoarthritis, back pain from degenerative disc disease, cubital tunnel syndrome, knees effusions/osteoarthritis, and bipolar depression with some manic symptoms *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

The ALJ then found that Plaintiff has the RFC to perform "light work" with the following limitations: consisting of lifting or carrying no more than twenty pounds with frequent lifting or

carrying of objects weighing up to ten pounds. The claimant is able to sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday. The claimant is further limited to operation of foot controls and hand controls frequently, occasionally reaching overhead, and frequently reaching in other directions. He can handle items frequently as well as finger and feel frequently. He can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, scaffolds, ramps, and stairs. He can occasionally work at unprotected heights, operate a motor vehicle, work around moving mechanical parts, and be exposed to vibrations. The claimant is able to understand, remember, and carry out work that can be learned and mastered in 30 days or less and can occasionally interact with the public and frequently interact with supervisors and coworkers. *Id*. at 39-40.

At step four, the ALJ determined that Plaintiff could not perform past relevant work as a general clerk for litigation services. *Id*. at 55.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there are jobs that exist in significant numbers in the national economy that he can perform. *Id*. at 56. Specifically, the ALJ found that Plaintiff can work as a remnants cutter, a trimmer, hand basket filler or photocopy machine operator. *Id*. The ALJ then concluded that Plaintiff was not under a disability at any time from October 31, 2018. *Id*. at 57.

### 3.    Analysis

Plaintiff moves the Court to remand for benefits or, in the alternative, remand for further proceedings on three grounds. ECF No. 22 at 15, 26, 29. First, Plaintiff asserts that the ALJ did not properly evaluate the opinions related to physical and mental impairments. Second, Plaintiff asserts that the ALJ failed to provide specific, clear and convincing reasons to discount Plaintiff's pain and symptom testimony. Third, Plaintiff asserts that the ALJ posed an incomplete hypothetical to the vocational expert.

### A.  Whether the ALJ failed to properly evaluate the medical opinion evidence

The ALJ is required to articulate findings regarding only supportability and consistency with the evidence. 20 C.F.R. § 416.920c(b)(2) (identifying two most important factors, supportability and consistency), (c) (enumerating all factors); *Woods v. Kijakazi*, 32 F.4th 785,

791 (9th Cir. 2022). *Woods* affirms that the most important factors when evaluating the

persuasiveness of medical opinions are "supportability" and "consistency." *Id.* (citing 20 C.F.R. §

404.1520c(a)). "Supportability means the extent to which a medical source supports the medical

opinion by explaining the 'relevant ... objective medical evidence.'" *Id.* (citing § 404.1520c(c)(1).

"Consistency means the extent to which a medical opinion is 'consistent ... with the evidence

from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting §

404.1520c(c)(2)).

### i. Opinions of physical impairment

The parties dispute whether the ALJ erred in her analysis by failing to consider each

medical opinion and determining the persuasiveness of the opinion based on the relevant factors.

Plaintiff argues that the ALJ "did not identify any specific clinical findings nor objective testing

that are allegedly inconsistent with the opinions from the examining specialists and did not

explain how the evidence supposedly conflicts with those opinions." ECF No. 23 at 17.

Defendant responds by detailing the extensive inconsistencies between the opinions and the

objective medical records.

Specifically, Plaintiff targets the ALJ's analysis of Dr. Ramsey's physical functioning

opinion. The ALJ summarized Dr. Ramsey's opinion:

> Dr. Ramsey diagnosed the claimant with lumbago with radiculopathy, cubital
> tunnel syndrome, left knee pain, and left ankle pain. Functionally, he opined that
> the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently,
> stand/walk for at least two hours in an eight-hour workday, and sit for four hours
> in an eight-hour workday. He could occasionally perform all postural maneuvers
> and occasionally finger and handle, but could not work around heights, hazards, or
> machinery.

ECF No. 17 at 46. The ALJ stated that she found Dr. Ramsey's opinion only partially persuasive

*Id.* "While it is generally supported by Dr. Ramsey's examination of the claimant with regards to

the lifting and carrying limitations and postural limitations, the examination provides insufficient

support for a limitation to only sitting four hours in an eight-hour workday." *Id.* The ALJ, in

addition to addressing supportability and consistency in general, gave specific examples of

inconsistencies between Dr. Ramsey's opinion and the medical records.

Dr. Ramsey's consultive examination included a clinical examination and objective testing including tests of his range of motion and strength in his ankles, knees, hips, back, neck and extremities. *Id.* at 903-913. Further, Dr. Ramsey reviewed extensive medical records including an EMG of Plaintiff's left elbow and MRIs of his left ankle and right knee. *Id.* Significantly, Dr. Ramsey's objective testing supported the ALJ's determination that Plaintiff could perform light work. Plaintiff had full range of motion and no loss of strength in his knees and ankles; he had no difficulty walking without an assistive device; he was able to tandem walk and walk on heels and toes; he was able to sit comfortably; his grip was firm and symmetrical when squeezing the examiner's fingers; he could lift a 15-pound weight with either hand; and he had no difficulties opening or closing a jar, picking up a button, or making a fist. *Id.* at 907-10.

The ALJ found that these normal examination findings did not support the limitations that Dr. Ramsey assessed regarding Plaintiff's ability to stand/walk, sit, or handle/finger *Id.* at 46. Substantial evidence supported the ALJ's determination that Ramsey's opinion was not consistent with the record. *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between physician's opinion and his records is a valid reason for discounting that opinion); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ properly discounted medical opinion that was contradicted by doctor's own contemporaneous findings).

The ALJ went further, contrasting Dr. Ramsey's opinion with Ramsey's clinical examination of Plaintiff. The ALJ demonstrated that the opinion was also inconsistent with the other treatment records that were reviewed by Dr. Ramsey. Plaintiff's treatment records showed Plaintiff had little to no difficulty walking; he had no effusion or swelling in his knees; and he had full strength and intact sensation in his lower extremities (ECF No. 17 at 46-47; *see, e.g.,* i*d.* at 703 (Aug. 2018: normal gait, no tenderness, effusion, or swelling in knees, normal range of motion in knees, and 5/5 strength and intact sensation in lower extremities); 616-17, 615-16 (Sept. 2018: 5/5 motor strength in upper and lower extremities, intact sensation in lower extremities, largely normal ranges of motion in all joints, and normal gait with no assistive device); 702 (Sept. 2018: normal gait); 1262 (Oct. 2019: steady gait); 1239 (Nov. 2019: normal gait, knee crepitus and tenderness but no effusion or swelling, normal ranges of motion in knees,

and 5/5 strength and intact sensation in lower extremities)). Further, Plaintiff's treatment records for 2020 and 2021 did not contain any physical examinations or document any musculoskeletal or neurologic deficits (*Id.* at 47, 1123-1357).

Defendant has shown that the ALJ identified specific clinical findings and objective medical testing that were inconsistent with Dr. Ramsey's opinion and the ALJ explained how the evidence conflicted with that opinion. Substantial evidence supported the ALJ's determination that Plaintiff's numerous, normal physical examinations were contrary to the significant limitations that Dr. Ramsey assessed in standing, walking, and sitting. Therefore, Plaintiff has failed to demonstrate that the ALJ failed to properly consider the physical medical opinion evidence.

**ii. Whether the ALJ failed to properly evaluate the mental impairment medical opinion evidence**

Plaintiff asserts that the ALJ failed to adequately consider Dr. Ryser's opinion based on the factors of supportability and consistency. The ALJ summarized Dr. Ryser's opinion:

> Dr. Ryser diagnosed claimant bipolar one disorder, most recent episode of depressed, severe with psychotic features; generalized anxiety disorder; and alcohol use disorder in sustained remission. She further opined that the claimant appeared challenged to consistently understand, remember, and apply information and appeared limited with the ability to learn, recall, and use information to perform work activities. As such, while she found he may be able to follow some one or two step instructions to carry out a task, he was likely to struggle with detailed/complex instructions and may also be challenged to use reason and judgment to make work-related decisions depending on his mental state at a given time. She found the claimant appeared to have limited concentration, persistence, and ability to maintain pace with regards to focusing attention, work activities and staying on task at a sustained rate. She also found the claimant likely to have difficulty with the ability to relate to and work with supervisors, coworkers, and the public on a consistent and independent basis. As such, she concluded that his mental disorders would keep him from regulating his emotions, controlling his behavior, or maintaining his well-being in a work setting and is likely to struggle in dealing with normal pressures in a competitive work setting.

ECF No. 17 at 50. Further Dr. Ryser determined that Plaintiff had marked limitations in maintaining attention and concentration for extended periods, performing activities within a schedule, consistently being punctual, working in coordination with or near others, accepting

instructions and responding appropriately to criticism from supervisors, responding appropriately

to workplace changes, and traveling to unfamiliar places, or using public transportation. *Id.*

Dr. Ryser also noted moderate to marked limitations in remembering locations and work

like procedures, sustaining ordinary routine without supervision, interacting appropriately with

the public, asking simple questions or requesting assistance, getting along with coworkers or

peers without distracting them, maintaining a socially appropriate behavior, being aware of

hazards, asking appropriate questions, and making plans independently. *Id.* Four remaining areas

of psychological impairment were marked as moderate impairments. *Id.*

The ALJ found Dr. Ryser's opinions "unpersuasive as they are not supported by her

examination of the claimant that did find some deficits in the area of attention and concentration,

as well as recent memory deficits, but his immediate and remote memory, cognitive functioning,

and fund of information were all intact, which fails to support the moderate to marked or marked

limitations in the vast majority of the mental functioning areas." *Id.* Further, the ALJ described

inconsistency between her clinical examination and findings. The ALJ also found that Dr. Ryser's

opinion that physical pain coupled with his mental impairments would exacerbate his inability to

function in the workplace "outsider her area of expertise." *Id.* at 51. The ALJ found her opinion

unpersuasive because it was inconsistent with "his longitudinal [psychiatric] history." *Id.*

However, even though the ALJ discussed his rejection of Dr. Ryser's opinion using the

terms unpersuasive, inconsistent and not supported, he did not make detailed findings

demonstrating the longitudinal history that clashed with Dr. Ryser's opinions. The ALJ's most

detailed finding stated that the "balance of evidence indicates that the claimant's symptomology

has been well-controlled throughout the relevant period on medication (Ex. B3F; B8F; B10F;

B11F)." Though the ALJ listed a string of citations to the reports of different visits Plaintiff made

to his VA doctors for psychiatric help, she failed to articulate how that evidence was evaluated.

*See Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014) ("an ALJ errs when he rejects a

medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting

without explanation that another medical opinion is more persuasive, or criticizing it with

boilerplate language that fails to offer a substantive basis for his conclusion."). That is exactly

1  what the ALJ has done here, rejecting the evidence because she determined that it was based on

2  Plaintiff's subjective report of symptoms, with little to no analysis.

3       Merely discrediting Dr. Ryser's opinion because it partially relies on a "patient's

4  subjective allegations is to allow an end-run around our rules for evaluating medical opinions for

5  the entire category of psychiatric disorders." *Ferrando v. Comm'r of Soc. Sec. Admin.,* 449

6  Fed.Appx. 610, 612 n.2 (9th Cir. 2011). "Psychiatric signs are medically demonstrable

7  phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior,

8  mood, thought, memory, orientation, development, or perception, and must also be shown by

9  observable facts that can be medically described and evaluated." C.F.R. § 404.1502(g); *Robinson*

10  *v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("a psychological opinion may rest either on

11  observed signs and symptoms or on psychological tests…thus, [the doctor's] observations about

12  claimant's limitations do constitute specific medical findings").

13       The conditions or abnormalities identified as a basis for the opinion of Dr. Ryser are

14  consistent with the mental health records that she consulted: depressions (ECF No. 17 at 663,

15  716, and 752-753); anxiety (*Id.* at 6664, 718, 752-753, 1109, 1195, and 132); an abnormal affect

16  (*Id.* at 1103); mania (*Id.* at 1182-1183 and 1194); difficulty thinking or concentrating (*Id.* at 664,

17  716, 718, 1195, and 1329); paranoia/suspiciousness (*Id.* at 1195 and 1329); appetite

18  disturbances/weight change (*Id.* at 716, 1194, and 1328); decreased energy (*Id.* at. 716 and 1194);

19  abnormal speech (*Id.* at 1195 and 1329); social withdrawal or isolation (*Id.* at 716);

20  delusions/hallucinations (*Id.* at 664 and 718); and disturbed sleep (*Id.* at 688, 716, 752-753, and

21  1194). The ALJ erred by not considering the consistency of these findings with the opinions from

22  Dr. Ryser pursuant to 20 C.F.R. § 416.920c(c)(2). Therefore, on remand the ALJ must make

23  specific findings determining the persuasiveness of each source relied on by Dr. Ryser without

24  making a blanket invalidation of all sources for partially relying on Defendant's subjective

25  description of his symptoms.

26  ///

27  ///

28  ///

1    **B. Whether the ALJ failed to provide specific, clear and convincing reasons to**

2    **discount Plaintiff's pain and symptom testimony**

3         The parties dispute whether the ALJ provided specific, clear, and convincing reasons in

4    discounting Plaintiff's subjective symptom testimony. *Compare* ECF No. 23 at 27-30 with ECF

5    No. 27 at 25–30.

6         In determining whether a claimant's testimony regarding subjective pain or symptoms is

7    credible, the ALJ engages in a two-step analysis. *Garrison*, 759 F.3d at 1014. "First, the ALJ

8    must determine whether the claimant has presented objective medical evidence of an underlying

9    impairment which could reasonably be expected to produce the pain or other symptoms alleged."

10   *Id.* (citation and quotation omitted). "The claimant is not required to show that h[is] impairment

11   'could reasonably be expected to cause the severity of the symptom [h]e has alleged; [h]e need

12   only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v.*

13   *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

14   36 (9th Cir. 2007)). If the claimant satisfies the first step of the analysis, and there is no evidence

15   of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms

16   "only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and quotation

17   omitted); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).

18        General findings are insufficient; rather, the ALJ must identify what symptoms are being

19   discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d

20   821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the

21   ALJ to sufficiently explain why they discounted the claimant's symptom claims). "The clear and

22   convincing [evidence] standard is the most demanding required in Social Security cases."

23   *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924

24   (9th Cir. 2002)). That said, if the ALJ's credibility finding is supported by substantial evidence in

25   the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

26        Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause the

27   alleged symptoms. ECF No. 17 at 42. However, the ALJ found Plaintiff's "statements concerning

28   the intensity, persistence and limiting effects of these symptoms are not entirely consistent with

1    the medical evidence and other evidence in the record for the reasons explained in this decision."
2    *Id.*

3        Because the ALJ concluded that Plaintiff is not malingering, she could reject Plaintiff's
4    "testimony about the severity of h[is] symptoms only by offering specific, clear and convincing
5    reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and
6    internal quotation marks omitted).

7        Defendant argues that Plaintiff's lack of treatment after his alleged on-set of disability is
8    clear and convincing evidence that Plaintiff's symptoms were not as severe as alleged. Plaintiff
9    argues that when discounting Plaintiff's testimony regarding his back pain, the ALJ incorrectly
10   failed to address Plaintiff's unrebutted testimony that he was on a waiting list for "pain injection
11   treatments" at the VA which began limiting care in early 2020 due to COVID restrictions. (ECF
12   No. 17 at 92-93). Plaintiff also testified that he refused strong pain medications (opioids) because
13   they caused nausea, inability to focus and increased his depression. (*Id.* at 91-92, 100).

14       "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony
15   regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (quoting
16   Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)). However, the ALJ must offer specific,
17   clear and convincing reasons for discounting his testimony. He did not address this testimony
18   when discounting Plaintiff's statements regarding the severity of his symptoms. Accordingly, on
19   remand the ALJ must address Plaintiff's testimony if she continues to discount Plaintiff's
20   testimony regarding the severity of his symptoms because of lack of treatment.

21       **C. Whether the ALJ posed an incomplete hypothetical to the vocational expert**

22       Plaintiff asserts that at step three of the sequential evaluation process, the ALJ determined
23   that Plaintiff has moderate difficulties with concentration, persistence, or pace, but did not include
24   a limitation of moderate difficulties in concentration, persistence, or pace in a hypothetical that
25   she posed to the vocational expert in determining whether Plaintiff could perform other work at
26   step five. Defendant argues that a hypothetical that included an ability to perform simple, routine
27   repetitive tasks adequately captures the Defendant's limitations in concentration, persistence, or
28   pace. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

1      The "hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must

2  set out all the limitations and restrictions of the particular claimant." *Valentine v. Comm'r of Soc.*

3  *Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.2009) (citation and internal quotation marks omitted)

4  (emphasis original). "Thus, an RFC that fails to take into account a claimant's limitation is

5  defective." *Id.*; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005). Here, the ALJ's

6  determination that Plaintiff could perform simple and detailed tasks was adequately represented

7  in the hypothetical posed to the vocational expert. Unless the ALJ alters his determination of

8  Plaintiff's impairments at step two or three on remand, there is no need to readdress the

9  hypothetical posed to the vocational expert.

10 **III. Conclusion**

11     **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (ECF No. 22) is

12 **GRANTED** consistent with this Order.

13     **IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion to Affirm (ECF

14 No. 28) is **DENIED**.

15     **IT IS FURTHER ORDERED** that, on remand, the ALJ must provide specific, clear, and

16 convincing reasons for discounting any portion(s) of Plaintiff's subjective symptom testimony.

17     **IT IS FURTHER ORDERED** that, on remand, the ALJ must reconsider Plaintiff's RFC

18 assessment.

19     **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter

20 judgment in favor of Plaintiff and close this case.

21     DATED: October 3, 2023.

22 _____

23 BRENDA WEKSLER
   UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28